UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NICHOLAS LUPO, MATTHEW STONEMAN, and DAVID PRICE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:24-cv-01088 ) |
| TRE HARGETT in his official capacity as Tennessee Secretary of State, and MARK GOINS in his official capacity as Coordinator of Elections, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This 42 U.S.C. § 1983 case is one of several related election cases filed in district courts across the country. Those cases allege that state election officials unconstitutionally excluded electors from the November 5, 2024 general election ballot merely because their pledged presidential candidate, Dr. Shiva Ayyadurai, is not a "natural-born citizen" and is ineligible to serve as President.[1] In this case, Plaintiffs Nicholas Lupo, Matthew Stoneman, and David Price, proceeding pro se, have sued Tennessee Secretary of State Tre Hargett and Coordinator of Elections Mark Goins (collectively, "Defendants") in their official capacities for declaratory and injunctive relief. Before the Court is Defendants' Motion to Dismiss (Doc. No. 13), which is fully briefed and ripe for review (see Doc. Nos. 14, 18, 20, 24). For the following reasons, Defendants' Motion will be granted.

---

[1] See, e.g., Sias v. Way, No. 24-8747 (MAS) (RLS), 2024 WL 4505108, at *6 (D.N.J. Oct. 16, 2024); Lauters v. Evnen, No. 4:24-CV-3175, 2024 WL 4517911, at *3 (D. Neb. Oct. 17, 2024); Rohr v. Utah, No. 2:24-cv-00659-AMA-DBP, 2024 WL 4528163 (D. Utah Oct. 18, 2024).

I.     **FACTUAL ALLEGATIONS AND BACKGROUND**[2]

Plaintiffs are Tennessee residents who, along with eight other individuals (collectively, the "Elector Candidates"), submitted "Nomination Petitions" to the Tennessee Secretary of State "to be Electors of the President and Vice President of the United States for pledged independent candidate for President Dr. Shiva Ayyadurai." (Doc. No. 8 ¶¶ 1, 4–6). The Complaint alleges that the Nomination Papers met all the necessary requirements under Tennessee law for the Elector Candidates "to be officially placed on the ballot to be Presidential Elector Candidates in the State of Tennessee." (Id. ¶¶ 2, 21–23). As part of the nomination process, each of the Elector Candidates pledged that: "If selected for the position of elector as a nominee of an unaffiliated presidential candidate, I agree to serve and to mark my ballot for [Dr. Ayyadurai] and for that candidate's vice-presidential running mate," Crystal Ellis. (Id. ¶ 8).

On August 14, 2024, the Office of the Tennessee Secretary of State issued a "Receipt of Filing" letter confirming that it "received the nominating petition for Shiva Ayyadurai as a candidate for President of the United States in the general election to be held on November 5, 2024." (Id. ¶ 23). The letter further provided that Dr. Ayyadurai "will be notified once it has been determined that all requirements have been met for placing the candidate's name on the ballot," and "[i]f qualified, [Dr. Ayyadurai's] name will appear on the ballot[.]" (Id.). Plaintiff Lupo signed this letter. (Id.).

At some point thereafter, attorneys for the Tennessee Secretary of State determined that Dr. Ayyadurai was ineligible to serve as President because he was not "naturally born" in the

---

[2] The Court draws these facts from the September 20, 2024 Verified Complaint (Doc. No. 8) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

United States.³ (Id. ¶¶ 25, 29). On September 4, 2024, Defendant Goins sent a letter to Dr. Ayyadurai informing him that he would not be placed on the Tennessee ballot. (Id. ¶¶ 14, 27). A different election official, Lena Russomanno, simultaneously informed Lupo and another Elector Candidate that Dr. Ayyadurai would not be on the ballot. (Id. ¶¶ 25–26). On September 5, 2024, Lupo responded to Russomanno that the Elector Candidates themselves "are running for the Office of Elector in the State of Tennessee," and that the Tennessee Secretary of State "had no right to [] remove *them* from the ballot based on the 'qualifications' of their Pledged Candidate for President." (Id. ¶¶ 25, 28 (emphasis added)). Lupo called this decision an "ignorant and moronic ruling" and "demanded he and the [other] Elector Candidates be put back on the ballot immediately." (Id. ¶ 28). Later that day, Goins emailed Lupo that: "The decision was made after attorneys within [the Tennessee Secretary of State's] office looked at the issue. I understand you intend to sue but the decision has been made." (Id. ¶ 29). On September 6, 2024, Lupo responded that: "Your attorneys are either DUMB or intentionally violating the Law," and "[y]our ignorance intentional or otherwise must be punished." (Id. ¶ 30).

Plaintiffs then filed a three-count Complaint under § 1983 for declaratory and injunctive relief against Goins and Hargett in their official capacities. The operative Complaint⁴ alleges that Defendants violated the Elector Candidates' First and Fourteenth Amendment rights by refusing to place their names on the Tennessee general election ballot. (Id. ¶¶ 1, 9, 55). In terms of their

---

³ According to at least one signed Complaint in another case, Dr. Ayyadurai was born in Mumbai, India, and became a naturalized American citizen in November 1983. See Ayyadurai v. Garland, No. 23-2079 (LLA) (D.D.C. 2023), Doc. No. 1 ¶¶ 5, 8; see also Doc. No. 8 ¶ 27 (noting that Dr. Ayyadurai has publicly stated he was born outside of the United States).

⁴ Plaintiffs indicated in their sur-reply that they would be filing a motion for leave to file an amended complaint. (Doc. No. 24 at 5–6). However, Plaintiffs still have not done so, and it would not be prudent to delay this case further while Plaintiffs' "Motion for Emergency Hearing" related to the November 5, 2024 election remains pending.

request for relief, Plaintiffs have asked the Court to issue: (1) a declaratory judgment stating that Defendants lacked "subject matter jurisdiction" to reject Dr. Ayyadurai and the Elector Candidates from the November 5, 2024 general election ballot; and (2) an injunction against Defendants to both "nullify their decision to remove the Elector Candidates from the ballot," and to "prevent Defendants from printing ballots for the November 5, 2024 general election" that do not include the Elector Candidates. (Id. ¶¶ 66, 78, 83). Defendants responded with the instant motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (See Doc. Nos. 13–14).

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

A defendant may move under Rule 12(b)(1) to dismiss a case for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, "the *plaintiff* has the burden of proving jurisdiction[.]" Wayside Church v. Van Buren Cnty., 847 F.3d 812, 817 (6th Cir. 2017) (quoting Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). In considering a facial attack, the Court must take all the allegations in the Complaint as true and determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." Id. (emphasis added). But when the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has "carrie[d] the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Ready for the World Inc. v. Riley, No. 19-10062, 2019 WL 4261137, at *2 (E.D. Mich. Sept. 9, 2019) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)).

B. Motion to Dismiss Under Rule 12(b)(6)

A defendant may also move under Rule 12(b)(6) to dismiss a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the Complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the Complaint meets this standard, the Court must accept the Complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). "While the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. **ANALYSIS**

It is difficult to discern the exact nature of Plaintiffs' allegations, but, as in other related cases, their "claims seem to hinge on the idea that they're the actual candidates, they're the ones who've been kept off the ballot, and their actual pledged candidate really doesn't have anything to do with it." See Lauters, 2024 WL 4517911, at *3; see also (Doc. No. 18 at 6–8). Additionally, Plaintiffs appear to argue that they are entitled to run for the "office of Electors for president and vice president," and that Defendants acted without jurisdiction and "went after the wrong person"

when they excluded *Plaintiffs' names* from the Tennessee general election ballot. (Doc. No. 18 at 20).

Defendants respond that this Court should dismiss Plaintiffs' claims because (1) this case is moot, (2) Plaintiffs' claims are barred by sovereign immunity, (3) Plaintiffs fail to allege a First or Fourteenth Amendment violation, and (4) issuing an injunction on the eve of an election would violate the Purcell principle. Because mootness and sovereign immunity relate to subject matter jurisdiction, the Court is required to address those issues first before moving to the others. See Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990) ("[W]e are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."); see also KNC Invs., LLC v. Lane's End Stallions, Inc., 579 F. App'x 381, 383 (6th Cir. 2014) (a motion to dismiss for mootness is properly characterized as a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction); Geomatrix, LLC v. NSF Int'l, 82 F.4th 466, 478 (6th Cir. 2023) (noting that "*sovereign* immunity is a jurisdictional defect that should be addressed under Rule 12(b)(1)").

A.  Mootness

Defendants first argue that this case should be dismissed under Rule 12(b)(1) as moot because the November 5, 2024 ballot has already been finalized and mailed to military personnel, and therefore "the time for any ballot changes has come and gone."[5] (Doc. No. 14 at 4). Plaintiffs respond that the Supreme Court has held multiple times that "ballot access constitutional cases," like this one, "are not moot" even if the election itself is over. (Doc. No. 18 at 11–12). The Court agrees with Plaintiffs.

---

[5] An argument "that Plaintiff's requested declaratory and injunctive relief are moot constitute[s] a factual attack on subject matter jurisdiction." Duren v. Byrd, 2021 WL 3848105, at *5 (M.D. Tenn. Aug. 26, 2021) (citations omitted).

Under Article III of the Constitution, federal courts only have subject matter jurisdiction over "actual, ongoing controversies." Mwasaru v. Napolitano, 619 F.3d 545, 549 (6th Cir. 2010) (citation omitted). "[W]hen the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome," then the case becomes moot and the Court lacks jurisdiction. Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation and internal quotation marks omitted). "The heavy burden of demonstrating mootness rests on the party claiming mootness." Cleveland Branch, NAACP v. Parma, 263 F.3d 513, 531 (6th Cir. 2001).

As relevant here, "[a]n exception to the mootness doctrine exists for wrongs that are 'capable of repetition, yet evading review.'" Libertarian Party of Ohio v. Blackwell, 462 F.3d 579, 584 (6th Cir. 2006) (quoting Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979)). This exception "applies when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur." Id. The first prong is easily satisfied here because disputes about election laws "almost always take more time to resolve than the election cycle permits." See id. (citations omitted). The Court finds that the second prong also is satisfied because the issues in this case are capable of reoccurring. For example, there is a reasonable expectation that these or other similarly situated elector candidates could run for office in future Tennessee general elections. See id. It is also reasonably likely that some elector candidates in the future will pledge their electoral college votes to a presidential candidate who is deemed ineligible to serve as President. Given that the standard for the second prong of this exception is "somewhat relaxed . . . in election cases," the Court finds that this controversy is "capable of repetition, yet evading review" and not moot. See id. (citation omitted); see also Norman v. Reed, 502 U.S. 279, 704–05 (1992)).

B. <u>Sovereign Immunity</u>

Defendants next argue that the Court does not have subject matter jurisdiction over Plaintiffs' claims because sovereign immunity shields them from this lawsuit.[6] (Doc. No. 14 at 6–7). Sovereign immunity under the Eleventh Amendment generally deprives federal courts of subject matter jurisdiction when a citizen sues a State or state official in his official capacity. <u>Russell v. Lundergan-Grimes</u>, 784 F.3d 1037, 1046 (6th Cir. 2015) (noting that a "suit against a state official in his or her official capacity . . . is a suit against the State itself"). "There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in <u>Ex parte Young</u> . . . applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." <u>Puckett v. Lexington-Fayette Urban Cnty. Gov't</u>, 833 F.3d 590, 598 (6th Cir. 2016) (citation omitted). Because Defendants have not consented to suit, and Congress has not clearly and expressly abrogated Tennessee's immunity, only the second exception is at issue here.

The doctrine set forth in <u>Ex parte Young</u>, 209 U.S. 123 (1908) "allows plaintiffs to bring claims for *prospective* relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." <u>Boler v. Earley</u>, 865 F.3d 391, 412 (6th Cir. 2017) (emphasis added). This doctrine does not extend to retroactive relief. <u>Id.</u> To determine if <u>Ex parte Young</u> applies, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Id.</u> (citations, internal quotation marks, and alterations omitted).

---

[6] An assertion of sovereign immunity may constitute either a facial or factual attack on jurisdiction depending on the argument. See <u>L.C. v. United States</u>, 83 F.4th 534, 542 (6th Cir. 2023). Here, the Court finds that Defendants' sovereign immunity argument is best characterized as a facial attack because it challenges Plaintiffs' request for relief without disputing the facts alleged in the Complaint. See <u>id.</u>

Defendants contend Plaintiffs are seeking purely retroactive relief—and therefore Ex parte Young does not apply—because this case is about Defendants' "isolated past" decision not to place Plaintiffs' names on the Tennessee general ballot. (Doc. No. 14 at 6–7). Plaintiffs have not responded substantively to this argument. (See Doc. No. 18 at 12). Nevertheless, the Court disagrees with Defendants and finds that Plaintiffs do, in fact, seek prospective relief in this case. Specifically, Plaintiffs seek an injunction directing Defendants to put the Elector Candidates' names on the November 5, 2024 election ballot, "certify all 11 Elector Candidates for the offices of independent Electors for President and Vice President," and stop printing additional ballots without their names. (See Doc. No. 8 ¶¶ 3, 66 (2)(b), 77(2)(c), 83(2)(c)). As such, the Ex Parte Young doctrine applies, and Defendants are not entitled to sovereign immunity over Plaintiffs' claims.

      C.      Constitutional Claims

Moving to the merits, Defendants contend that this Court should dismiss the Complaint under Rule 12(b)(6) because Plaintiffs fail to state a constitutional claim upon which relief may be granted. (Doc. No. 14 at 8–13). Although the Complaint often groups Defendants' conduct as violating both the "First and Fourteenth Amendment," (see Doc. No. 8 ¶¶ 1, 9, 55), the Court will address these claims separately. As explained more fully below, the Court does not find that the Complaint plausibly alleges a constitutional violation to survive Defendants' Rule 12(b)(6) motion, and therefore Plaintiffs are not entitled to the declaratory or injunctive relief they have requested in this case.

      1.      First Amendment

The Complaint alleges that Defendants violated Plaintiffs' First Amendment right "to support the candidates of their choice," "petition voters," "associate as Electors with a political

campaign," and have their own names placed on the Tennessee general election ballot.[7] (Doc. No. 18 ¶¶ 15, 58). The First Amendment prohibits States from enforcing laws "abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. First Amendment rights are not absolute, however, and "states may impose reasonable restrictions on ballot access to ensure that political candidates can show a significant modicum of support from the public, and to avoid election- and campaign-related disorder." Green Party of Tennessee v. Hargett, 767 F.3d 533, 545 (6th Cir. 2014) (citation and internal quotation marks omitted); Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986). "Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." Bullock v. Carter, 405 U.S. 134, 145 (1972) (citation omitted). "And that interest has consistently supported excluding candidates from the ballot when they are indisputably ineligible for the office to which they aspire[.]" Lauters, 2024 WL 4517911, at *5.

As an initial matter, notwithstanding their zeal, Plaintiffs' First Amendment claim does not square with Tennessee law or the practical reality of presidential elections. "[P]residential elections in the United States are indirect—it's the Electoral College that casts the ballots which actually, directly elect the President"—"[b]ut it's also generally well-understood that modern presidential elections are about the presidential candidates, not the people forming the Electoral College." Lauters, 2024 WL 4517911, at *4 (citing U.S. Const. Art. II, ¶ 1, ¶¶ 2–3). Tennessee

---

[7] Plaintiffs further allege that Defendants' actions somehow jeopardized "the First Amendment rights of all voters that signed the 11 Elector Candidates' petitions for their right to nominate and to vote for Electors of their choice at the November 5, 2024 general election." (Doc. No. 8 ¶ 59). The Court need not entertain this argument further because it does not find, and Plaintiffs do not argue, that Plaintiffs have standing to assert a claim under § 1983 on behalf of these unnamed Tennessee voters. See Stein v. Cortés, 223 F. Supp. 3d 423, 433 (E.D. Pa. 2016).

law reflects this understanding and expressly provides that the "*[n]ames of electors need not appear on the ballot.*" Tenn. Code Ann. § 2-5-208(h) (emphases added). Instead, only the "names of presidential candidates" are placed on the ballot, and a vote for a specific presidential candidate is counted as a vote for the electors pledged to that candidate. Id.; see also Tenn. Code. Ann. § 2-15-101; Ray v. Blair, 343 U.S. 214, 229 (1952). There is nothing unconstitutional about Tennessee's election practice because "Article two, section one of the Constitution authorizes a state legislature to determine how presidential electors shall be appointed and does not require the electors' names to appear on the ballot if the names of the candidates for president and vice-president are on the ballot." Fischer v. Rollins, 1993 WL 219805, at *1 (1st Cir. 1993) (Table) (citation omitted); see also Conant v. Brown, 248 F. Supp. 3d 1014, 1027 (D. Or. 2017). The Court therefore joins several other district courts in holding that "the relief [Plaintiffs] are seeking—to be certified for the ballot—simply doesn't make sense" because "Presidential electors don't appear on the ballot." See, e.g. Lauters, 2024 WL 4517911, at *4.

Plaintiffs' First Amendment claim also ignores that "the practice in many states of allow[ing] a vote for the presidential candidate . . . to be counted as a vote for his party's nominees for the electoral college" is a "long-continued practical interpretation of the constitutional propriety of an implied or oral pledge of his ballot by a candidate for elector as to his vote in the electoral college[.]" Blair, 343 U.S. at 229; Chiafalo v. Washington, 591 U.S. 578, 597 (2020). If Plaintiffs win the election, Tennessee law requires them to "cast their ballots in the electoral college for" Dr. Ayyadurai because he or his party "nominated them as electors." Tenn. Code Ann. § 2-15-104(c)(1). Plaintiffs also pledged in writing "to serve and to mark [their] ballots" for Dr. Ayyadurai for President. (See Doc. No. 8 ¶ 8); see also Tenn. Code. Ann. § 2-15-204(a). And Plaintiffs cannot disregard their pledge and vote for a different candidate because an elector who

"refuses to present a ballot, presents an unmarked ballot, or presents a ballot marked in violation of the elector's pledge under § 2-15-204" automatically "vacates the office of elector." Tenn. Code Ann. § 2-15-207(c). Given that presidential candidates and their pledged electors are inexorably linked by agreement, it is reasonable for Tennessee to exclude from the ballot electors who have pledged allegiance to a candidate that is constitutionally barred from serving as President.

The Court also disagrees that Defendants acted "without jurisdiction" and violated the First Amendment when they excluded the Elector Candidates and Dr. Ayyudarai from the ballot based solely on Dr. Ayyudarai's ineligibility to hold the Office of President. (See Doc. No. 18 at 3). Contrary to Plaintiffs' suggestion, Defendants have the right to prevent an ineligible, non-natural-born-citizen from running for President. (See Doc. No. 18 at 2, 4–8 (arguing that there is a meaningful difference between being qualified to *hold* office and being qualified to *run* for office). "[A] state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office." Hassan v. Colorado, 495 F. App'x 947, 948–49 (10th Cir. 2012) (Gorsuch, J.) (citations omitted). "Moreover, courts have held that when determining who can be on a presidential ballot, a State can enforce" the natural-born-citizen requirement in "Article II, Section 1, Clause 5." Sias, 2024 WL 4505108, at *6; see also Hassan, 495 F. App'x at 948; Hassan v. New Hampshire, 2012 WL 405620, at *4 (D.N.H. Feb. 8, 2012). These constitutional rules make a lot of sense because otherwise, if Tennessee could not exclude a frivolous candidate from the ballot, then "anyone, regardless of age, citizenship or any other constitutional ineligibility would be entitled to clutter and confuse [the] electoral ballot." Lindsay v. Bowen, 750 F.3d 1061, 1064 (9th Cir. 2014). "Nothing in the First Amendment compels such an absurd result." Id.

Accordingly, Defendants did not violate the First Amendment when they excluded Dr. Ayyudarai and rejected Plaintiffs' request to appear on the November 5, 2024 general election ballot.

    2.    <u>Fourteenth Amendment</u>

The Complaint separately alleges that Defendants violated Plaintiffs' Fourteenth Amendment procedural due process rights to run for the independent "office of Electors for president and vice president." (<u>See</u> <u>id.</u> ¶¶ 33, 37, 66, 83). Plaintiffs base this claim on the language from Tenn Code Ann. § 2-3-203(6), which provides that Tennessee holds elections "for the following *offices*" during "the regular November election when the election immediately precedes the commencement of a full term: . . . *Electors for president and vice president*." (<u>Id.</u> (emphases added)). Plaintiffs argue that this language creates a standalone "office of the Electors for president and vice president" in Tennessee, and that they have a right to run for this office even if their pledged candidate is ineligible to serve as President. (<u>Id.</u>). This argument, while creative, finds no support in law or fact.

The Fourteenth Amendment's Due Process Clause forbids states from "depriv[ing] any person of life, liberty, or property[] without due process of law." U.S. Const. amend. XIV, § 1. To establish a Fourteenth Amendment due process violation, Plaintiffs must show that (1) they had life, liberty, or property interests protected by the Due Process Clause; (2) they were deprived of these protected interests; and (3) the state did not afford them adequate procedural rights. <u>Women's Med. Prof'l Corp. v. Baird</u>, 438 F.3d 595, 611 (6th Cir. 2006). Of course, the threshold question in adjudicating a procedural due process claim is whether Plaintiffs possessed a liberty or property interest. Without a protected interest, there is no need to reach the issue of whether there were adequate deprivation procedures. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>Thompson v. Ashe</u>, 250 F.3d 399, 407 (6th Cir. 2001).

Even if Tennessee had an independent "office of the Electors for president and vice president," which it does not, Plaintiffs could not possibly have a constitutionally protected interest in running for that office. The Supreme Court in Snowden v. Hughes held that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or liberty secured by the due process clause." 321 U.S. 1 (1944). After Snowden, "the lower courts have repeatedly held that a candidate for political office holds no property or liberty interest in an elected position." Newsom v. Golden, 602 F. Supp. 3d 1073, 1083–84 (M.D. Tenn. 2022) (collecting cases); see also, e.g., Leroy v. New York City Bd. of Elections, 793 F. Supp. 2d 533, 537 (E.D.N.Y. 2011). This Court recently did the same, reasoning that the clear holding from Snowden remains good law and has not been overruled. See Newsom, 602 F. Supp. 3d at 1084. Here, too, the Court finds that Plaintiffs have no constitutionally protected interest in their placement on the ballot in any capacity, and therefore their Fourteenth Amendment due process claim necessarily fails.

D. Purcell Principle

Defendants' motion raises one final wrinkle regarding the timing of Plaintiffs' request for relief. (See Doc. No. 14 at 7–8). In cases involving a challenge to a state's election procedures, "the Supreme Court has adopted a unique injunction principle" known as the "Purcell principle." Tenn. Conf. of the NAACP v. Lee, 105 F.4th 888, 895 (6th Cir. 2024) (citing Purcell v. Gonzalez, 549 U.S. 1 (2006)). Under this principle, "lower federal courts should ordinarily not alter the election rules on the eve of an election." Republican Nat'l Comm. v. Democratic Nat'l Comm., 589 U.S. 423, 424 (2020). That is because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." Purcell, 549 U.S. at 4–5; see also Merrill v. Milligan, 142 S. Ct. 879, 880–81 (2002) (Kavanaugh, J., concurring). Although there are no definitive parameters for what constitutes "on the eve of an election," the

Sixth Circuit has held that injunctions issued one month before an election likely violate the Purcell principle. Lee, 105 F.4th at 897.

There are many practical reasons for following the Purcell principle in this case. As the United States District Court for the District of Nebraska recently held:

> Practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges. And this election is *already proceeding*. Early voting is underway and mail-in ballots have been distributed and returned. The election is not merely close, or even imminent—it is happening right now.
>
> So, what can the Court do at this point without running afoul of Purcell? Should completed ballots be discarded and replaced with new ones? [The Court] would be hard pressed to think of a situation more confusing to a voter than receiving a second ballot with instructions to vote again. Should the Court order publication of new ballots for those who haven't voted yet? Different ballots issued to otherwise similarly situated voters would pose different legal problems. And that's assuming any of this is even feasible, for which the plaintiffs have made no showing.

Lauters, 2024 WL 4517911 (citations and internal quotation marks omitted). The Court shares these same concerns, and Plaintiffs do not explain how changing the Tennessee general election ballot at this late hour is feasible or would avoid voter confusion. In any event, because the Court will grant Defendants' motion to dismiss on the merits and effectively maintain the status quo, the Court will not alter Tennessee's elections rules in violation of the Purcell principle.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss (Doc. No. 13) and dismiss this entire case under Rule 12(b)(6).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE